ORIGINAL

Of Counsel:
KAWAMURA LAW OFFICE
Attorneys At Law

ROBERT D. KAWAMURA 4537-0
107 Lawyers Building
550 Halekauwila Street
Honolulu, Hawaii   96813
Telephone: (808) 523-3777
Facsimile: (808) 523-3780
Email:    Honolaw@aol.com

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

AUG 03 2006

at 3 o'clock and 30 min. P M
SUE BEITIA, CLERK

Attorneys for Plaintiffs/Limitation Defendants
SHIROH FUKUOKA, Individually and
as Personal Representative of
THE ESTATE OF MITSUKO FUKUOKA, and
as Next Friend Of MIHO FUKUOKA, a Minor

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| In the Matter<br><br>Of<br><br>The Complaint of MORNING STAR CRUISES, INC., a Hawaii corporation.<br><br>_____<br><br>SHIROH FUKUOKA,<br><br>    Plaintiff,<br><br>Vs.<br><br>MORNING STAR CRUISES, INC.,<br><br>    Defendant.<br><br>_____ | Civil No. CV03-00672SOM (Non-Vehicle Tort)<br><br><br><br>Civil No. 04-00588 SOM-BMK (Consolidated)<br><br>**LIMITATION DEFENDANTS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF'S COMPLAINT FOR EXONERATION FROM OR LIMITATION OF LIABILITY FILED JULY 21, 2006;** DECLARATION OF ROBERT D. KAWAMURA; EXHIBITS "1" - "8"; CERTIFICATE OF SERVICE<br><br>Date: August 21, 2006<br>Time: 9:45 a.m.<br>Judge: Susan Oki Mollway |

**LIMITATION DEFENDANTS' MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF'S
COMPLAINT FOR EXONERATION FROM OR LIMITATION
OF LIABILITY FILED JULY 21, 2006**

I.  Introduction

The above-entitled Limitation Defendants, by and through its attorney, Robert D. Kawamura, hereby oppose Limitation Plaintiff's Motion For Summary Judgment In Favor Of Plaintiff's Complaint For Exoneration From Or Limitation Of Liability Filed May 17, 2006. This wrongful death case involves the drowning of a visitor from Japan during a "snuba" diving activity operated by Limitation Plaintiff in Kaneohe Bay, Hawaii. The snuba dive involved divers walking on the bottom of the ocean wearing a helmet with an air line to the surface. While walking on the sea floor, Mitsuko Fukuoka, a wife and mother, gave a distress signal to one of the operator's employees who were also walking on the sea floor and he attempted to assist her to the surface. This employee was assisting Mrs. Fukuoka up the ladder when he dropped her or otherwise caused her to fall from the ladder to the bottom of the ocean, causing water to leak into her open helmet, whereby she drowned.

II. Argument

    A.  This motion should be denied as genuine issues of material fact exist as to whether the subject "vessel" was unseaworthy or whether Defendant or its crew was negligent.

Limitation Plaintiff has failed to meet its burden of showing that the subject vessel was unseaworthy or that it or its

crew was not negligent. Limitation simply baldly asserts by way of declaration that the vessel and seawalker system was in working order and that it had no knowledge that there were any problems with the vessel or the seawalker system nor that it was negligent in any way. Yet, the indisputable fact remains that water entered Mitsuko Fukuoka's helmet causing her to drown. As is set forth below as explained by Limitation Defendant's expert, the only way for Mrs. Fukuoka to have drowned is for her helmet's position to have become compromised. As is undisputed, while walking 15 feet deep on the ocean floor Mrs. Fukuoka gave Limitation Plaintiff's employee the learned distress signal. He came to her aid and "assisted" her to the ladder and up the ladder. It is while she was on the ladder being assisted by the employee that she fell back to the ocean floor.

Moreover, Limitation Defendants are not claiming that there was anything wrong with the "vessel". See complaint. Rather, they complain that Defendants were negligent in their monitoring of the underwater diving activity, particularly when they negligently dropped Mitsuko Fukuoka from the ladder to the ocean bottom. In any event, genuine issues of material fact exist as to Defendant's handling of Mitsuko Fukuoka's underwater plight. While Limitation Plaintiff brings this motion, it fails to address the opinion of Limitation Defendants' expert, Thomas C. Ebro, an aquatic safety specialist, which opinion Limitation

Plaintiff had in its possession on June 27, 2005, which provides in pertinent part as follows:

> "The fact that this was a snuba activity immediately tells us that **Mrs. Fukuoka could not have drowned unless water had penetrated into her helmet. The only way for water to have penetrated into her helmet was for the helmet's position to be compromised.** It was not reported anywhere that Mrs. Fukuoka attempted to remove her helmet. Morever, it was reported that Mrs. Fukuoka had difficulty waling and **had given the company's distress signal, plus she had attempted to climb back up the ladder to the surface.** It was incumbent upon Morning Star's employees to detect her emergency and ensure her safe and timely transport back to the surface. We know that his never occurred because she inhaled water and drowned.
>
> Mrs. Fukuoka's death was caused by Morning Star's failure to detect her emergency and respond to her plight. Morning Star failed to conduct a proper safety check beforehand to prevent her helmet's position from becoming compromised. Her supervision underwater clearly fell below the standard of care. **The 'instructor/guides' who should have been closely watching her,** failed to detect the onset of her emergency and responded too late. In my opinion, Mrs. Fukuoka's death was entirely preventable. Morning Star's negligent safety planning and underwater supervision egregiously caused this needless drowning." (emphasis added)

See Pg. 3, Thomas C. Ebro's June 24, 2005 Preliminary Expert Report, Ex. "1". Mr. Ebro has over forty years of professional experience in administering water safety activities, operating scuba diving resorts and investigated and reconstructed over 1,200 water accidents. He is a past certified instructor in scuba diving, water safety boating, first aid, CPR, small craft, water skiing and aquatic risk management. He has also developed water safety training films and videos for the American National

4

Red Cross concerning basic snorkel-diving and underwater search-and-rescue skills. He served for ten years as a Los Angeles aquatic specialist and also as a medial examiner's deputy coroner. He has instructed water safety specialists, aquatic facility managers, swim coaches, waterfront recreation leaders, instructors and lifeguards. He has had his own private practice consulting on water safety and aquatic risk management over the past 20 years. Limitation Plaintiff has <u>never</u> disclosed any expert to refute Mr. Ebro's opinion.

In addition, Mr. Ebro's opinion that water entered Mrs. Fukuoka's helmet is consistent with what Mr. Fukuoka and his daughter Miho contend occurred:

> "We were in the water for only about 5 minutes when Mitsuko gave the guide the distress hand signal to indicate something wrong with her body. **With one of the instructors, she returned to the ladder and began to climb back up the ladder. It seems that while she was climbing, she passed out and fell back in the water toward the bottom of the ocean. The guide pulled her to the surface.** By the time she was brought to the surface, she was without a pulse and spit up water and some sand-like 'frothy looking material' when they were attempting to resuscitate her." (emphasis added)

<u>See</u> Miho Fukuoka's Response to Interrogatory No. 9, Ex. "2". <u>See also</u> Shiroh Fukuoka's Response to Interrogatory No. 9, Ex. "3". Thus, genuine issues of material fact exists as to whether Limitation Plaintiff was negligent.

    B.    Genuine issues of material fact exist as to whether Limitation Plaintiff was without privity or knowledge of the negligence/unseaworthiness and therefore liability should not be limited to the value of the vessel.

5

Limitation Plaintiff disingenuously contends that it was without privity or knowledge of the "negligence" or "unseaworthiness" of the vessel. As set forth above, Mrs. Fukuoka's 18 year old daughter (15 at the time) and husband both attest that one of Limitation Plaintiff's instructors escorted Mrs. Fukuoka back to the ladder and then up the ladder at which time she fell back in the water to the sea floor. Clearly, as Limitation Plaintiff's employees were charged with the duty of supervising and monitoring the dive underwater, they were responsible for the safety and welfare of all divers including Mrs. Fukuoka. Limitation Plaintiff's subject employee was negligent in his technique in escorting Mrs. Fukuoka up the ladder as he could not prevent her from falling off the ladder causing her to fall back to the ocean floor. This obviously caused her helmet's position to become compromised causing water to enter it causing her to ingest water and drown.

Limitation Plaintiff was also negligent in failing to have sufficient instructors underwater and sufficient procedures to handle such a situation where a diver develops a distressed situation whereby the diver could become weak or unconscious. Limitation Plaintiff's employees should have anticipated such an event given that the helmets simply rested upon divers' shoulders and therefore were not air tight. Because of this, they knew or should have known that they would have to assist distressed divers to the surface without compromising the positioning of the

diver's helmet. It is undisputed that Limitation Plaintiff only had two instructors in the ocean at the time which meant that only one instructor could assist Mrs. Fukuoka to the surface because the other had to supervise and monitor the remaining divers underwater. Having more than one diver assist Mrs. Fukuoka up the ladder probably would have prevented her from falling off the ladder or at least would have minimized any injury to Mrs. Fukuoka. Limitation Plaintiff could have had another instructor enter the water from the boat to assist the other instructor in helping Mrs. Fukuoka up the ladder, but this did not occur.

According to the ambulance report, it was reported that:

> "Upon arrival found this 40 year old female, Japanese National – lying lateral in boat @ docks . . . ventilations by **Dive Staff who states** Pt pulled from water unresponsive while ascending from approximately 15 ft of sea water while 'snuba' type diving. **Per staff Pt was being assisted to surface ? reason – when once breaking surface of $H_2O$ became unresponsive** – not breathing č blood coming from nose/mouth . . ." (emphasis added)

See Ambulance Report, Ex. "4". This report seems to indicate that Mrs. Fukuoka was actually conscious while she was being assisted up the ladder and only became unresponsive after she reached the surface. This is consistent with Mr. Fukuoka and Miho Fukuoka's statements that Mrs. Fukuoka "fell back in the water toward the bottom of the ocean." (emphasis added). If this is true, Limitation Plaintiff's employees were negligent in

7

escorting, securing and assisting a distressed diver up the ladder.

The emergency room record documents that:

"The patient is a 43-year old Japanese national who was out on a boating trip with some type of SNUBA gear where she had the helmet on and went down to a depth of 15 feet and was down underneath the water for about 5 minutes when she started having apparently some type of episode occurring while at 25 feet depth. She apparently **had difficulty walking, difficulty tying to climb back up the ladder**, and <u>required assistance by an assistant diver</u>. It sounds that before she ever even got to the surface, she had an episode while at 15 feet depth standing on the bottom of the ocean of having some type of either pulmonary or cardiac event. By the time she surfaced, the boat crew related that she was cyanotic, was without a pulse. One of the boat crew who is a fireman, related that she brought up about 2 cups of water, presumably sea water, when they were resuscitating her, with some frothy-looking material." (emphasis added)

<u>See</u> Emergency Room Record, Ex. "5". Thus, Limitation Plaintiff's employee who knew that Mrs. Fukuoka was in distress, should have taken proper measures to prevent her from falling off of the ladder to the sea floor. The employee could have radioed another employee from the boat to enter the water to assist him, but this did not occur. Because only one employee assisted her up the ladder, he alone was unable to prevent her from falling from the ladder when she apparently became unresponsive.

Even more egregious, Hideo Morishige of Limitation Plaintiff reported to the Medical Examiner that one of the employees **"pulled her to the surface."** If Mrs. Fukuoka only became unresponsive when she reached the surface, why did the

8

employee have to "pull" her to the surface? Clearly, this could have caused water to enter Mrs. Fukuoka's open helmet:

> "MORISHIGE related that the dive boat that the decedent was on had two instructors per every six students. The dive consisted of students and instructors putting on a clear plastic, round helmet that covered the head and went to the shoulder area. An air line runs from the boat to the helmet and provides a continuous air supply to the helmet. The students and instructors dive to depths of twelve to fifteen feet. On the day of the incident the decedent was at a depth of about fifteen feet when one of the instructors saw the decedent in some kind of trouble she was trying to reach the underwater ladder from the boat but was having difficulty in walking toward it. The instructor went to her aid and assisted her to the ladder. The decedent was unable to climb the ladder and **the instructor pulled her to the surface.** She was taken aboard the boat where she was found to be unresponsive and CPR was initiated aboard the boat. (emphasis added)

See Pg. 5, Honolulu Medical Examiner Report, Ex. "6". Had there been more instructors assisting Mrs. Fukuoka she could have been properly and safely assisted up the ladder preventing her from falling from the ladder or the single instructor would not have had to "pull" her to the surface.

Given that Limitation Plaintiff knew that the divers wore open helmets that simply rested upon the diver's shoulders and knowing that any such diver in distress would have to safely negotiate a ladder approximately 15 feet to the surface, Limitation Plaintiff knew or should have known that such distressed divers may have difficulty climbing the ladder thereby compromising the helmet's position. Despite this, it only had two instructors per six divers, meaning that if one diver was in

9

distress, one instructor would have to stay with the other five divers leaving only one instructor to assist the distressed diver to the surface. Moreover, had Limitation Plaintiff put in place a procedure for assisting distressed divers to the surface such as having another instructor enter the water to assist in bringing the diver to the surface, or providing auxiliary air to the distressed diver while being assisted to the surface, Mrs. Fukuoka may be alive today.

    C.    Limitation Plaintiff has Failed to produce its responses and responsive documents and things in response to Limitation Defendant's discovery requests and therefore this motion should be denied.

While Limitation Plaintiff contends that there is no genuine issue of material fact as to its liability, it has failed to produce any responses or documents to Limitation Defendants' discovery requests. See Plaintiffs/Limitation Defendants Shiroh Fukuoka, Individually And As Personal Representative Of The Estate Of Mitsuko Fukuoka, And As Next Friend Of Miho Fukuoka's First Request For Answers To Interrogatories And Request For Production Of Documents And Things to Limitation Defendant/Limitation Plaintiff Morning Star Cruises, Inc., Ex. "7". Responses to these requests were due June 23, 2006 and are still overdue. See Certificate of Service, Ex. "8". This motion should be denied on this basis alone. In the alternative, this motion should be stayed pending the production of responses and documents and things to the outstanding discovery requests.

II.  Conclusion

Based on the foregoing, Limitation Defendants respectfully request that the Honorable court deny the instant motion.

Dated: Honolulu, Hawaii, ___August 3, 2006___.

_____
Robert D. Kawamura

Attorney for Limitation
 Defendants
SHIROH FUKUOKA, Individually
and as Personal Representative
of THE ESTATE OF MITSUKO
FUKUOKA, and as Next Friend Of
MIHO FUKUOKA, a Minor